**In re PIZZA TIME THEATRE SECURITIES LITIGATION.**

No. C–84–20048(A) RPA.

United States District Court, N.D. California.

Nov. 12, 1986.

& Bacine, Philadelphia, Pa., W. Robert Morgan, Morgan, Morgan, Towery, Morgan & Spector, San Jose, Cal., Herbert E. Milstein, Steven J. Toll, Cohen, Milstein & Hausfeld, P.C., Washington, D.C., Richard D. Greenfield, Carole A. Broderick, R. Bruce McNew, Greenfield & Chimicles, Haverford, Pa., I. Stephen Rabin, Wolf Popper Ross Wolf & Jones, New York City, David B. Flinn, Leland Parachini Steinberg Flinn Metzger & Melnick, San Francisco, Cal., Stanley M. Grossman, Marc I. Gross, Pomerantz, Levy, Haudek, Block & Grossman, New York City, for plaintiffs.

Allan R. Tessler, Sheldon D. Camhy, Kurt Hunciker, Shea & Gould, New York City, Ronald Lovitt, J. Thomas Hannan, Lovitt & Hannan, Inc., San Francisco, Cal., for plaintiff Executive Life Ins. Co.

Dean J. Pasvankias, Kaplan & Pasvankias, San Francisco, Cal., for plaintiffs.

Tower C. Snow, Jr., James A. Hughes, Robert J. Favole, John R. Kanberg, Orrick, Herrington & Sutcliffe, San Francisco, Cal., for defendants Nolan K. Bushnell, Joseph F. Keenan, Bruce R. Munro and Randall L. Pike.

Gary H. Anderson, Norma G. Formanek, Pillsbury, Madison & Sutro, San Francisco, Cal., Randolf J. Rice, Jeffrey H. Wong, Pillsbury, Madison & Sutro, San Jose, Cal., for defendants L.F. Rothschild, Unterberg, Towbin, Robertson Colman & Stephens, and Alex. Brown & Sons.

Denis T. Rice, Howard, Rice, Nemerovski, Canady, Robertson & Falk, San Francisco, Cal., for Pizza Time Theatre, Inc.

Bruce G. Vanyo, Steven M. Schatz, Denise Amantea, Linda Cheng, Wilson, Sonsini, Goodrich & Rosati, Palo Alto, Cal., for defendants Joseph W. Callahan, Jr., Wallace R. Hawley, Stephen E. Lieberman and Donald T. Valentine.

David B. Gold, Paul F. Bennett, David B. Gold, a Professional Law Corp., San Francisco, Cal., Leonard Barrack, Gerald J. Rodos, Edward M. Gergosian, Barrack, Rodos

## RECONSIDERED OPINION re DISCLOSURE OF NON–TESTIFYING EXPERTS TO NON–PARTY

WAYNE D. BRAZIL, United States Magistrate.

After considering oral and written submissions by plaintiffs and by non-party

Peat, Marwick, Mitchell & Co., (hereafter referred to simply as Peat, Marwick), including, but not limited to, the declarations of James K. Loebbecke, Anthony J. Costantini, Manfred Seiden, and Irwin Schumer, the briefs submitted directly to Judge Aguilar on the issue decided here, and the supplemental briefs filed for purposes of this reconsideration, the court hereby VACATES its earlier ruling and, for the reasons set forth below, DENIES the motion by Peat, Marwick for a protective order that would compel plaintiffs to disclose to Peat, Marwick the identities of their non-testifying experts as a precondition to Peak, Marwick producing the otherwise discoverable documents (accountant's working papers) sought by counsel for plaintiffs. The court further ORDERS Peat, Marwick to complete production of the subject documents within 20 days of the filing of this order. The first issue the court must resolve is: what is the legal standard that applies in the setting here presented? That setting can be described briefly. Plaintiffs are seeking, through a subpoena, working papers that non-party Peat, Marwick generated while it was auditing the corporate defendant in this case, Pizza Time. Peat, Marwick refuses to disclose the documents unless counsel for plaintiffs first identify the non-testifying experts to whom the documents will be shown. Peat, Marwick takes this position even though the documents in question would be subject to a protective order that would preclude plaintiffs' counsel from using the documents in any other litigation or from disclosing the documents to any person not connected with plaintiffs' efforts to prosecute this case. The principal reason Peat, Marwick articulates for taking this position is its concern that unless it knows the identity of the experts to whom plaintiffs' counsel shows its working papers it will not be able to monitor compliance with the protective order and thus cannot assure itself that information it deems proprietary does not reach competitors and is not used against it in other litigation by the lawyers who represent the plaintiffs in this case.

Peak, Marwick argues that the applicable legal standard is paragraph (c) of Rule 26 of the Federal Rules of Civil Procedure. Rule 45, pursuant to which plaintiffs have subpoenaed the documents here in issue, explicitly entitles non-parties to seek protective orders under paragraph (c) of Rule 26. Under paragraph (c) of Rule 26, courts "*may* make any [protective] order which justice requires" upon motion and "for good cause shown" (emphasis added). Peat, Marwick argues that this is the only applicable provision in the Rules and that the showing it has made, through its affidavits, constitutes "good cause" and thus entitles it to the protective order it seeks. Plaintiffs, by contrast, argue that the appropriate standard is the appreciably more demanding "exceptional circumstances" requirement of subparagraph (B) of Rule 26(b)(4). While acknowledging that this subparagraph explicitly governs discovery only by and from *parties,* plaintiffs contend that to permit non-parties to disgorge information from parties on a lesser standard would vitiate the purposes of this important and carefully crafted provision of the rules relating to discovery.

Plaintiffs also suggest that there is no reason to give non-parties access to information under a less demanding standard than the rules make applicable to parties. As I will explain below, in the specific setting presented here this latter point by plaintiffs may be well taken, but as a general proposition it overlooks an important consideration that helped shape the drafting of the various components of subparagraph (4) of Rule 26(b). As the Advisory Committee's Note accompanying the 1970 amendments make clear, the drafters of that subparagraph wanted it to reinforce each litigant's motivation to aggressively develop his own side of any given case by retaining and relying on his own expert. The flip side of that objective was to discourage lazy or unscrupulous lawyers from trying to cut case-preparation corners by leaching basic information or valuable opinions from experts retained by their opponents. Thus, as a general proposition, there is greater reason to be concerned about a *party's* efforts to discover informa-

tion about another party's experts than there is about comparable efforts by *non-parties.*

The fact that there is greater reason to be concerned about discovery of information about experts by a party than by a non-party, however, does not mean that there is no reason to be concerned when the information is sought by a non-party and does not inevitably lead to the conclusion that the standard articulated in Rule 26(b)(4)(B) is not applicable on the facts here presented.

■ Moreover, even if paragraph (c) of Rule 26 is applicable here, it does not necessarily follow that the standard set forth in subparagraph (b)(4)(B) of that Rule is irrelevant. Paragraph (c) of Rule 26 says that courts "may" enter protective orders which, in their judgment, given all the circumstances in a particular situation, "justice requires". Under that paragraph, courts have considerable discretion in deciding whether the circumstances warrant entry of a protective order, and, if so, what provisions should be included. In exercising that discretion, courts should consider all the policies that inform the Rules and should strive for results that do no violence to standards explicitly incorporated into closely related provisions.

This sets the stage for confronting the consideration the court deems pivotal in the present situation. While Peat, Marwick is not a party to this case, it is a defendant in many other securities cases being prosecuted by the lawyers who represent the plaintiffs in this matter. See footnote 8, page 7, of plaintiffs' "Memorandum of Points and Authorities in Support of Plaintiffs' Motion for Review and Reconsideration of Magistrate's Ruling," filed June 19, 1986. Moreover, in at least one of those other lawsuits the conduct by Peat, Marwick that is being attacked by counsel for plaintiffs revolves around its auditing of a company engaged in retail operations quite similar to those engaged in by the corporate defendant in the case at bar. See paragraph 7 of "Declaration of Anthony J. Costantini in Opposition to Plaintiffs' Motion for Review and Reconsideration of

Magistrate's Ruling," filed October 10, 1986. In these other lawsuits the culpability, if any, of Peat, Marwick undoubtedly will be determined, at least in part, on the basis of analyses and opinions by experts in the subject areas in issue here. Because of these facts, it would exalt form over substance to treat Peat, Marwick's position in this case as equatable with that of a wholly disinterested non-party. In the real world that surrounds this particular debate, the relationship between Peat, Marwick and counsel for plaintiffs is thoroughly adversarial in subject areas directly related to matters embraced within this litigation. A myopic view that ignored that reality might lead to a ruling that would enable Peat, Marwick to use its non-party status in this case to gain access to information it would have no right to learn as a party in the other suits being prosecuted by plaintiffs' counsel. To be more specific, there is a risk that Peat, Marwick could use its status as a non-party in this action to learn the identities of non-testifying experts that counsel for plaintiffs also use in cases they are prosecuting against Peat, Marwick, including the case in which Peat, Marwick is defending its auditing practices with respect to a corporation quite similar to the corporate defendant in this litigation.

For the reasons just articulated, I believe that in exercising my discretion under paragraph (c) of Rule 26 I should refuse to enter the protective order sought by Peat, Marwick unless Peat, Marwick makes a showing of "exceptional circumstances" that is equivalent in persuasive power to the kind of showing necessary to satisfy subparagraph (B) of Rule 26(b)(4).

■ There is a division in the authorities about whether the "exceptional circumstances" requirement applies to efforts to discover only the identities of non-testifying experts, as opposed to the relevant facts they know and opinions they hold. Having studied carefully the leading cases in both camps, I am persuaded that the better reasoned view is that discovery of the identities of non-testifying experts should be subject to the same standard as discovery of their opinions, namely, the "exceptional circumstances" standard. See

*Ager v. Jane C. Stormont Hospital and Training School for Nurses,* 622 F.2d 496 (10th Cir.1980); *Kuster v. Harner,* 109 F.R.D. 372, 374 (D.Minn.1986), concluding that the view expressed in *Ager, supra,* "has become the prevailing one in the years since *Ager* was decided." But see *Baki v. B.F. Diamond Construction Co.,* 71 F.R.D. 179, 181–82 (D.Md.1976) and its progeny.

One additional reason for preferring this view is that I believe that a lawyer's decision about which experts to consult, but not to call as a witness, also is a matter that implicates values that the work product doctrine was designed to protect. I say this knowing that the Advisory Committee Notes to the 1970 amendments to Rule 26 make it clear that the drafters of that Rule "rejected[ed] as ill-considered the decisions which ... sought to bring expert *information* within the work-product doctrine." (emphasis added). While it may make good sense to treat *an expert's information or opinions* as something other than *a lawyer's work product,* it seems to me that a *lawyer's decision* about which people to use in which capacities in preparing a case for trial is right at the center of the kind of material protected by subparagraph (3) of Rule 26(b). In other words, courts should be careful to distinguish between (1) information known and opinions held by experts and (2) trial preparation decisions made by lawyers. There is no reason to believe that the Advisory Committee had the latter in mind when it articulated its views about how "expert information" ought to be categorized.

▆▆ In fact, a solid argument could be advanced that decisions by lawyers about which people to use for confidential pretrial consultation fall into that almost sacrosanct category recognized in the last sentence of the first paragraph of Rule 26(b)(3), namely "the mental impressions, conclusions, opinions, or legal theories of an attorney." A lawyer's decisions about which people to use in confidence for which purposes in preparing a case for trial is as central to lawyering strategy as one can get. When these decisions relate to the identity of experts who will *not* testify,

they should be disclosed only after a very substantial showing of need. The question that follows is whether Peat, Marwick's showing satisfies the applicable standard (the equivalent of "exceptional circumstances" or very substantial need that cannot otherwise be met). In my judgment, the answer is no. I am satisfied that Peat, Marwick has a proprietary interest in the material in the working papers in issue here. On this narrow question, I find the submissions from Professor Loebbecke and Mr. Costantini more persuasive than the Declaration from Mr. Seiden. It is far less clear, however, that Peat, Marwick has protected its proprietary interests by carefully preserving the confidentiality of the information that might be inferred from these working papers. Professor Loebbecke's Declaration and the paper on which it is based say nothing about steps Peat, Marwick actually has taken to protect the confidentiality of this kind of material. Mr. Costantini's Declaration addresses this issue, but in general terms that to some extent compromise the persuasive force of what he says. The only words in Mr. Costantini's declaration that relate to this issue are these: "it has always been my understanding that the various accounting firms have very different approaches to the audit process and that each of them guards its own approach vigilantly. Since Peat Marwick has one of the most highly structured audit approaches among the accounting firms, it has been most careful to limit disclosure to competitors in a manner which provides reasonable assurance that the competitor will not take competitive advantage of the information learned in litigation." Costantini Decl., at 2.

A few observations about this part of the Declaration are in order. First, Mr. Costantini says nothing about where or how he acquired his "understanding" of how Peat, Marwick or other firms conduct their audits or protect the confidentiality of their audit approaches. Second, he admits that Peat, Marwick has made disclosures directly to competitors, but claims, again without specificity, that the firm has made such disclosures in ways that provide "reasonable assurance" that its competitors will

not "take competitive advantage" of the information disclosed. Does this imply that competitors might be free to use the information as long as that use does not result in a competitive advantage? More significantly, Mr. Costantini clearly suggests in this passage that Peat, Marwick already has disclosed "proprietary" information about its audit procedures to competitors. Thus, at least some of Peat, Marwick's competitors apparently already have at least some of the kind of information that is in issue here.

The third point about Mr. Costantini's Declaration is that it refers specifically only to "the information [competitors] learned in litigation." This wording leaves open the possibility that competitors might learn about Peat, Marwick's audit procedures in environments other than litigation and that little or nothing is done to restrain the use of information so learned. The final point on this issue is that it is not at all clear to this court how Peat, Marwick could achieve its proferred monitoring objective even if it knew the names of the nontestifying experts plaintiffs are using in this case. According to the Declarations submitted by Peat, Marwick, all the major accounting firms keep quite secret the procedures they use in their audits. If that is so, how will Peat, Marwick ever be able to ascertain whether its competitors are using its procedures?

These limitations on the showing Peat, Marwick has made about how vigilantly it protects the secrecy of the kind of material here in issue, as well as the firm's failure to demonstrate how it could accomplish the monitoring it says it needs to do, are factors, albeit not dispositive, that lend support to this court's conclusion that Peat, Marwick has not made a showing equivalent to "exceptional circumstances."

Another factor that supports this conclusion is Peat, Marwick's failure to point to a single instance in which proprietary information it has disclosed in litigation, under a protective order, has been leaked to a competitor or to anyone else. Yet another consideration that cuts in the same direction is the relative insubstantiality of Peat, Marwick's interest in protecting against the possibility that counsel for plaintiffs might use information learned from it in this case, where it is not a party, in some other case, where it is a defendant. The core difficulty with this argument is that it ignores the fact that in the other cases counsel for plaintiffs have no need to resort to information acquired so circuitously; instead, the lawyers in the other cases can use the tools of discovery to compel Peat, Marwick to disclose the same kind of information that is in issue here. In fact, the scope of the material that opposing counsel could disgorge from Peat, Marwick is probably broader in the cases where it is a party. In those actions, I suspect that counsel could compel Peat, Marwick to disclose even its most sensitive forms and protocols, materials that counsel for plaintiffs have not sought here. Moreover, it is not clear what incentive counsel in the other cases would have to use materials produced in this action. Certainly anything counsel would intend to use at trial in the other actions would have to be authenticated, and careful attorneys would want to be able to show that the documents they offered for use in trial were produced in the normal course of discovery in the suit in question.

Finally, we must recall that the papers under discussion here will be produced under a protective order. There is no reason that that protective order cannot include a requirement that all documents produced by Peat, Marwick bear a stamp that indicates that they were produced in this action under a protective order that prohibits their use in any other proceeding. With such a stamp on each document it is difficult to imagine how counsel for plaintiffs could sneak any of these materials into some other proceeding.

For all the reasons articulated above, the court hereby finds that Peat, Marwick has failed to make a showing that is equivalent to "exceptional circumstances" or of substantial need that cannot otherwise be satisfied. Because the moving party has failed to make the required showing, it is not necessary to assess the weight of the interests that plaintiffs' counsel argue would be damaged if the court were to

require counsel to disclose to Peat, Marwick the non-testifying experts they will consult in this action. It might be helpful to observe, however, that even if the showing in support of counsel's concern about drying up the pool of experts available to plaintiffs who sue major accounting firms is something less than overwhelming (as in my view it is), there would remain, on plaintiffs' side of the scales, a threat to significant values implicated by the work product doctrine. Thus, even if the appropriate analysis in this situation consisted of a straightforward balancing of competing interests (I do not believe it does), it is not clear to me that Peat, Marwick would prevail.

For all the reasons articulated above, the court hereby DENIES Peat, Marwick's motion for a protective order that would compel counsel for plaintiffs to disclose the identity of their non-testifying experts and ORDERS Peat, Marwick to produce the subject working papers within twenty calendar days of the filing of this order.

It is so ORDERED.