No. 89-96

IN THE SUPREME COURT OF THE STATE OF MONTANA

1989

STATE OF MONTANA, ex rel.,
BURLINGTON NORTHERN RAILROAD
COMPANY,

           Relator,

    -vs-

THE DISTRICT COURT OF THE EIGHTH
JUDICIAL DISTRICT OF THE STATE OF
MONTANA in and for the County of
Cascade, HONORABLE THOMAS M.
McKITTRICK, Judge thereof,

           Respondent.

ORIGINAL PROCEEDING:

COUNSEL OF RECORD:

    For Relator:

        James A. Robischon (argued); Charles Dearden; Murphy,
        Robinson, Heckathorn & Phillips, Kalispell, Montana

    For Respondent:

        Terry Trieweiler (argued), Whitefish, Montana

Submitted: July 7, 1989

Decided: September 19, 1989

Filed:

Clerk

Mr. Justice Fred J. Weber delivered the Opinion of the Court.

This application for a writ of supervisory control arises from an order by the District Court of the Eighth Judicial District, Cascade County, Montana. We accept jurisdiction of this application, and after receipt of briefs and oral argument, we order supervisory control.

Burlington Northern Railroad Company (Burlington Northern) was ordered by the District Court to answer certain interrogatories and was enjoined from any further discovery until compliance with the order. The District Court further ordered Burlington Northern to pay plaintiff's attorney fees and costs in bringing the motion to compel discovery. We affirm in part and reverse in part.

This action arises from injuries received by Mr. Gilliland, an employee of Burlington Northern Railroad in Whitefish, Montana. On August 4, 1988, at approximately 2:50 a.m., while he was working as a utility foreman assisting a switch crew in switching operations, Mr. Gilliland was injured. A railroad car ran over him during a switching movement, causing a traumatic amputation of his right leg above the knee, and his right arm above the elbow.

On August 4, 1988, just hours after the accident, a senior claims representative of Burlington Northern, Mr. Dale Roos, interviewed the two crew members who were operating the train which hit Mr. Gilliland. Mr. Roos also interviewed the supervising yardmaster. There were no eye witnesses to the accident. Mr. Roos also photographed the accident site that same morning. This action was filed on August 26, 1988, pursuant to Federal Employer's Liability Act.

On August 30, 1988, plaintiff served interrogatories, requests for production, notice of deposition, and deposition subpoena duces tecum on defendant. This discovery included

2

requests for defendant's entire investigative file, copies of Burlington Northern's safety rules and films, photographs of the accident site, investigative reports, and witness statements.

On October 12, 1988, plaintiff deposed several witnesses, including Mr. Roos, and the Burlington Northern employees whose statements had been taken immediately after the accident. The subpoena duces tecum, which had been issued to Mr. Roos, requested that he bring to the deposition his entire investigative file. The subpoena duces tecum specifically requested a number of items, including the photos of the accident site, and the witness statements he had taken. However, Mr. Roos did not bring the photographs to the deposition, stating rather that he had turned them over to defendant's lawyers. Mr. Roos did bring his file to the deposition, but the witness statements and a four-page list of safety materials with Mr. Roos' handwritten notations, had been removed. At the deposition he did produce handwritten statements of the Burlington Northern employees.

On October 17, 1988, defendant served interrogatories and requests for production on plaintiff. Plaintiff's deposition by Burlington Northern was scheduled for November 10, 1988. During the late afternoon of November 9, plaintiff's attorney called defendant to request that the photographs of the accident scene be brought to the deposition. Co-counsel of the attorney who would be taking plaintiff's deposition agreed that the photos would be brought to the deposition.

On November 10 the plaintiff and counsel for both parties arrived for the deposition. Plaintiff's counsel requested that plaintiff be allowed to view the photos prior to the commencement of the deposition. Counsel for Burlington Northern stated that he had not been informed that the prior viewing of the photographs was a condition to plaintiff's

deposition. Counsel for Burlington Northern agreed to allow plaintiff to view the photos during a recess or after the deposition had been concluded, but he refused to delay commencement of the deposition while the plaintiff viewed the 49 photographs in question. Plaintiff's counsel refused to begin the deposition before the plaintiff had the opportunity to view the photographs of the accident site. As a result of this disagreement, plaintiff's counsel would not allow the deposition to proceed. Counsel for Burlington Northern emphasized that he would subpoena plaintiff for a future deposition.

On the day following the aborted deposition plaintiff filed a motion to compel discovery and for sanctions. Plaintiff's motion to compel requested that the court order production of defendant's entire investigative file, disclosure of the identity of all experts consulted by defendant, copies of Burlington Northern safety rules and films, all photographs of the accident scene taken the morning of the injury, and all statements of crew members, employees, or witnesses. The motion included a request that defendant be prohibited from conducting any further discovery until ten days after compliance with the order, and also included a request for expenses incurred in bringing the motion to compel. On December 2, 1988, defendant filed a motion to compel discovery of answers to interrogatories and requests for production which had been served on plaintiff on October 17, 1988, but had not been answered. Defendant also requested a protective order regarding the identities of the non-witness experts, the witness statements obtained by Mr. Roos, the identity of Burlington Northern employees whose earnings were requested, and all privileged information contained in its file.

On December 5, 1988, the court heard argument on these motions and ordered further briefing on whether defendant

4

should be compelled to disclose identities of non-witness experts and witness statements. On February 10, 1989, the court issued an order compelling defendant to identify its non-witness experts and to disclose the witness statements taken by Mr. Roos. The court granted a partial protective order to defendant by ordering that certain employee earnings be disclosed, but keeping the employee identities confidential. While the court ordered that the photographs and catalog of safety files be produced, these items had already been produced by defendant on December 13, 1989. The court's order also restrained defendant from pursuing any further discovery until ten days after it had complied with plaintiff's discovery requests, and ordered defendant to pay $7,250 in attorney fees and $170 in costs to plaintiff. Defendant seeks relief from this order through a writ of supervisory control.

I

Is issuance of a writ of supervisory control appropriate regarding a motion to compel discovery?

Defendant contends that a writ of supervisory control should issue in the present case because the District Court has ordered production of privileged material. Defendant contends that because it asserted its right to withhold privileged work product it is now being prevented from conducting any discovery. It contends that if it is required to disclose material which is privileged then "the harm is complete and cannot be rectified by appeal." Thus there is no adequate remedy.

A discovery order is interlocutory and normally not appealable, and this Court has expressed disfavor in granting a writ in the context of a discovery issue. State ex rel. Guar. Ins. v. District Court (Mont. 1981), 634 P.2d 648, 38 St.Rep. 1682.

5

However, this Court has issued a writ in two significant cases involving discovery issues. In Kuiper v. Dist. Court of Eighth Judicial Dist. (Mont 1981), 632 P.2d 694, 38 St.Rep. 1288, a writ issued to determine whether the District Court had properly granted a protective order. Kuiper involved free speech issues and public policy considerations in that the plaintiff alleged Goodyear Tire Company had covered up a defect in a product. Kuiper also involved issues of whether certain material was work product.

In a second case, Jaap v. District Court of Eighth Judicial District (Mont. 1981), 623 P.2d 1389, 38 St.Rep. 280, this Court granted a writ because the District Court had exceeded its jurisdiction by allowing defendant's attorney to privately interview plaintiff's physicians. In Jaap the method of discovery was incorrect.

In accepting jurisdiction to resolve a discovery dispute, the court in Nat. Farmers Un. Prop. & Cas. v. Denver D.C. (Colo. 1986), 718 P.2d 1044, 1046 stated:

> Initially we note that orders pertaining to discovery are interlocutory in character and generally are not reviewable in an original proceeding. However, we will exercise our original jurisdiction when an order will place a party at a significant disadvantage in litigating the merits of the case.

Regarding the appropriateness of supervisory control, in Continental Oil v. Elks Nat. Foundation (Mont. 1989), 767 P.2d 1324, 1326, 46 St.Rep. 121, 123, this Court stated:

> Supervisory control is proper to control the course of litigation when the lower court has made a mistake of law or willfully disregarded the law so that a gross injustice is done and there is no adequate remedy by appeal; also, to prevent extended and needless litigation. (Citation omitted.)

6

The present case involved discovery of potentially privileged material. The discoverability of the identity of non-witness experts presented an issue of first impression in Montana. The sanctions imposed on defendant are severe and exceed the authority of Rule 37, as will be discussed further. We conclude that the order would place the defendant at a significant disadvantage in litigating the merits of the case and therefore accept supervisory control.

II

Did the District Court err in ordering disclosure of the identity of non-witness experts?

Plaintiff's first set of interrogatories included the following request:

> INTERROGATORY NO. 7: State the names and addresses of all experts you have retained or conferred with concerning this action or any facts or circumstances which are relevant to this action;
> . . .

Defendants objected to this interrogatory on the basis that it seeks the identity of experts not to be called at trial. Defendant contends that this information is not discoverable, basing this assertion on Rule 26(b)(4)(B), M.R.Civ.P., which provides:

> A party may discover facts known or opinions held by an expert who has been retained or specially employed by another party in anticipation of litigation or preparation for trial and who is not expected to be called as a witness at trial, only as provided in Rule 35(b) or upon a showing of exceptional circumstances under which it is impracticable for the party seeking discovery to obtain facts or opinions on the same subject by other means.

Federal Rule 26(b)(4) was adopted in 1970 to standardize discovery of expert witnesses. Montana's Rule 26(b)(4) is

identical to the federal rule. Subdivision (A) deals with discovery of experts who will be called to testify at trial. Subdivision (B) deals with non-witness experts. Thus the rule itself treats the two classes differently. While identity is not mentioned in this rule, the Advisory Comments to the rule state: "As an ancillary procedure, a party may on a proper showing require the other party to name experts retained or specially employed. . . ." 48 F.R.D. 487, 504.

Defendant contends that if the identity of experts who have been retained but who will not be called to testify at trial must be disclosed, then these witnesses could be contacted by the adverse party, and forced to testify. Defendant cites the case of Ager v. Jane C. Stormont Hospital and Training, Etc. (10th Cir. 1980), 622 F.2d 496, 503, for the holding that the identity of a non-witness expert is discoverable only upon a showing of exceptional circumstances. The Ager court also stated that an in-camera inspection is appropriate to initially determine the status of the expert. The Ager court based its holding on four policy considerations, as follows:

> . . . once the identities of retained or specially employed experts are disclosed, the protective provisions of the rule concerning facts known or opinions held by such experts are subverted. The expert may be contacted or his records obtained and information normally non-discoverable, under rule 26(b)(4)(B), revealed. Similarly, although perhaps rarer, the opponent may attempt to compel an expert retained or specially employed by an adverse party in anticipation of trial, but whom the adverse party does not intend to call, to testify at trial. Kaufman v. Edelstein, 539 F.2d 811 (2d Cir. 1976). The possibility also exists, although we do not suggest it would occur in this case, or that it would be proper, that a party may call his opponent to the stand and ask if certain experts were retained in anticipation of trial, but not called as a witness, thereby leaving with the jury an

> inference that the retaining party is attempting to suppress adverse facts or opinions. Finally, we agree with Ager's view that "[d]isclosure of the identities of [medical] consultative experts would inevitably lessen the number of candid opinions available as well as the number of consultants willing to even discuss a potential medical malpractice claim with counsel . . . "

Ager, 622 F.2d at 503.

The Ager court further concluded that '[t]he party "seeking disclosure under Rule 26(b)(4)(B), carries a heavy burden" in demonstrating the existence of exceptional circumstances,' citing Hoover v. United States Dept. of Interior, (5th Cir. 1980), 611 F.2d 1132, 1142 n. 13.

The holding in Ager accords with the statutory language of Rule 26(b)(4)(B). In analyzing the recent case of Kuster v. Harner (D. Minn. 1986), 109 F.R.D. 372, a case which followed the Ager holding, one commentator explained that not only the policy reasons enumerated in Ager support non-disclosure of identity under this rule, but the language of the rule itself indicates that identity is protected.

> Rule 26(b)(4) establishes a general rule and then carves out different standards for testifying and non-testifying experts. The general rule does not expressly address the disclosure of an expert's identity. Instead, Rule 26(b)(4)(A)(i) expressly mandates the disclosure of a testimonial expert's identity. The fact that the drafters thought it necessary to treat the identity of a testimonial expert separately may suggest that the identity of a non-testimonial expert need not be revealed. It seems reasonable to apply this restrictive approach not only to the facts and opinions of a non-testimonial expert but also to the expert's identity because when the Advisory Committee wanted an identity to be discovered, they provided for it as in Rule 26(b)(4)(A)(i).

M. Tapken, "Kuster v. Harner: A New Interpretation of Federal Rule of Civil Procedure 26(b)(4)(B)," 33 South Dakota L.Rev. 352 (1988).

We adopt the holding in Ager because we agree with its rationale. There are no significant cases to the contrary, and the following cases demonstrate that the Ager case is the current prevailing view on whether the identity of a non-witness expert is discoverable. (See, e.g., Detwiler v. Gall, Landau and Young Const. Co. (Wash.App. 1986), 712 P.2d 316; Kuster; In re Sinking of Barge Ranger I (U.S. D.C. Texas 1981), 92 F.R.D. 486; In re Pizza Time Theatre Securities Litigation (N.D. Ca. 1986), 113 F.R.D. 94).

We hold that the identity of non-witness experts is discoverable under Rule 26(b)(4)(B), M.R.Civ.P., only upon a showing of exceptional circumstances. In the present case, plaintiff made no showing of need for this information. This portion of the District Court's order is therefore reversed.

### III

Did the District Court err in ordering disclosure of witness statements taken by the senior claims representative of the defendant?

Within hours after Mr. Gilliland's accident, Mr. Dale Roos, the senior claims representative for Burlington Northern, interviewed the two crew members who were operating the train which hit Mr. Gilliland. The supervising yardmaster was also interviewed. One of the interrogatory questions at issue sought discovery of these interviews.

Defendant contends that this information is "work product" and is privileged, citing Rule 26(b)(3), M.R.Civ.P., which states in pertinent part:

> (3) Trial preparation: Materials. Subject to the provisions of subdivision (b)(4) of this rule, a party may obtain discovery of documents and tangible things otherwise discoverable under

10

subdivision (b)(1) of this rule and prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative (including his attorney, consultant, surety, indemnitor, insurer, or agent) only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of his case and that he is unable without undue hardship to obtain the substantial equivalent of the materials by other means. In ordering discovery of such materials when the required showing has been made, the court shall protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation.

Defendant contends that these statements were taken by an agent of defendant and were taken in anticipation of litigation. Defendant contends that this information may only be discovered upon a showing of substantial need, and that the substantial equivalent cannot be obtained without undue hardship.

Plaintiff contends that these statements were simply statements taken in the regular course of business and are discoverable without any showing of need. He refers this Court to our holding in Cantrell v. Henderson (1986), 221 Mont. 201, 718 P.2d 318, in which this Court concluded that a statement made by a defendant to his insurance company, before suit was filed, was not taken in anticipation of litigation and was therefore not privileged.

We conclude that the holding in Cantrell controls the present issue, allowing discovery. The rules of civil procedure are premised upon a policy of liberal and broad discovery. We therefore begin with the premise that these statements are generally discoverable. The statements at issue were taken in the regular course of the railroad's claims department business, just as in Cantrell the disputed

11

statement was taken in the regular course of the insurer's business. In the present case the contemporaneous statements, taken within 24 hours of the accident, are unique and non-duplicable and should be available to both parties. See Southern Railway Company v. Lanham (5th Cir. 1968), 403 F.2d 119; Stout v. Norfolk & W. Ry. Co. (U.S.D.C. Ohio 1981), 90 F.R.D. 160. The modern trend favors discovery of this type of information. For similar analyses, see Langdon v. Champion (Alaska 1988), 752 P.2d 999; Nat. Farmers Un. Prop. and Cas.; Henry Enterprises, Inc., v. Smith (Kan. 1979), 592 P.2d 915.

The analysis of this issue does not end with this initial premise however, because no absolute rule can be formed to apply to every case. We agree with the court in Klaiber v. Orzel (Ariz. App. 1985), 714 P.2d 830, that a balance must be sought which requires appropriate disclosure of facts, without allowing a party to build its case on the other party's efforts. As the Klaiber court stated:

> Thus, the exercise of the trial court's discretion in each case must involve striking a balance between ensuring that counsel for the requesting party is not permitted to build his case on the work done by his opponents and fostering sufficient disclosure to enable the ultimate determination of the issues to be based on a full development and presentation of the relevant facts. The first element requires a consideration of the efforts made by counsel to obtain the same or equivalent material. The second element requires a consideration of the nature of the material and the purpose for which it is sought.

Klaiber, 714 P.2d at 834.

In reaching this conclusion, we do emphasize that the plaintiff here has worked diligently to develop his case so that this statement does not apply in the present case.

12

While we begin with the premise that these witness statements are taken in the ordinary course of business and are discoverable, we recognize that in such statements there may very well be portions which are not discoverable because they constitute work product and are therefore privileged.

Rule 26(b)(3) precludes inquiry into information taken "in anticipation of litigation." This standard stems from the theory that attorney "work product" is privileged, a concept first articulated in Hickman v. Taylor (1947), 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451. This work product doctrine, incorporated into Rule 26(b)(3), gives a qualified immunity to materials prepared "in anticipation of litigation," and nearly absolute immunity to the "mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party to the litigation." Kuiper, 632 P.2d at 701.

If the present witness statements contain material which may be privileged, the burden is on Burlington Northern, the party opposing discovery, to make a motion to limit discovery and to make a showing that the material sought is privileged. If necessary, an in-camera inspection by the court is appropriate to determine whether certain portions of the material should be protected. Any material which reflects attorney thought processes is clearly not discoverable. As mentioned, a showing that information was taken in anticipation of litigation gives a qualified immunity.

We hold that the witness statements were taken in the ordinary course of business and are therefore discoverable. In the present case defendant has cited to the court no facts which would render these statements privileged. We affirm the District Court's order of disclosure of these statements.

13

Did the District Court err in enjoining defendant from any other discovery until it had complied with the court's discovery order?

The hearing on plaintiff's motion to compel discovery and for sanctions was held on December 5, 1988. The court issued its order on February 10, 1989. After ordering disclosure of the identity of non-witness experts, and disclosure of the witness statements, the District Court enjoined defendant from initiating any further discovery until ten days after compliance with the order. Plaintiff's motion for a protective order and to quash the subpoena duces tecum which had been served on him, compelling him to appear for a deposition, was granted. The court's order specifically ordered that plaintiff's deposition could not be taken until ten days after defendant had fully complied with the discovery order. The court then set a trial date for September 1989.

Defendant urges that this injunction against discovery is both inappropriate and overly severe. Defendant contends that it did not refuse to comply with an order since no discovery order had been issued. Defendant also contends that the sanction is inappropriate because defendant's opposition to the motion to compel was substantially justified. In the alternative, defendant urges that the sanction imposed was overly severe in relation to the alleged abuses.

Rule 37, M.R.Civ.P., authorizes sanctions for discovery abuses. Both an overview of Rule 37 and a close examination of the statutory language aids in our understanding of how this rule should be applied. Rule 37 of the Federal Rules of Civil Procedure was enacted because the discovery rules are not self-executing and the framers recognized the possibilities of abuse. Our Montana Rule 37 is identical to the federal rule. Rule 37 was enacted in 1938 and stood

14

virtually unchanged until 1970 when it was substantially revised. The 1970 amendments were intended to encourage more frequent use of sanctions for abuse. Wright, Miller, & Kane, Federal Practice and Procedure, § 2281, p. 756 (1970).

Rule 37, M.R.Civ.P., is divided into four subsections. The distinctions between each section must be recognized in analyzing the facts of the present case. Rule 37(a) provides that a party may apply for an order compelling discovery. If the motion is granted, the court shall award attorney fees and costs to the moving party, "unless the opposition to the motion was substantially justified." This same rule applies to the party opposing the motion if the motion is denied. Rule 37(a)(4).

Rule 37(b) provides for sanctions for failure to comply with an order. It is not necessary that the failure be willful. It appears that a finding of willfulness is relevant only to the choice of sanction. Societe Internationale v. Rogers (1958), 357 U.S. 197, 78 S.Ct. 1087, 2 L.Ed.2d 1255. In conjunction, Rules 37(a) and (b) contemplate giving the party a second chance to comply with discovery requests before awarding sanctions.

Rule 37(d) authorizes sanctions for 3 specific failures: 1) failure to attend at one's own deposition, 2) failure to serve answers to interrogatories; or 3) failure to serve a written response to a request for production. In the event of one of these failures, a court may issue sanctions, without first ordering the non-responding party to comply. No second chance is contemplated. It is important to note this distinction between Rule 37(b) and Rule 37(d). Under section (b) no sanctions are available without a previous court order; under section (d) no order is necessary, however, sanctions are only authorized for the three enumerated failures.

Montana has acknowledged this distinction in former cases. See First Bank (N.A.)-Billings v. Heidema (1986), 219 Mont. 373, 711 P.2d 1384 (affirming judgment in favor of bank entered by trial court pursuant to Rules 37(b) and (d) for borrower's willful refusal to attend own deposition, refusal to produce documents, and ignoring court orders directing compliance); Dassori v. Roy Stanley Chevrolet Co. (Mont. 1986), 728 P.2d 430, 43 St.Rep. 2113, (holding that a motion to compel is not required as a condition to sanctions under Rule 37(d), and affirming trial court's dismissal of complaint as a sanction for failure to respond to interrogatories; Thibaudeau v. Uglum (1982), 201 Mont. 260, 653 P.2d 855, (refusing to instruct trial court on remand that it should award sanctions, noting that Rule 37(b) requires failure to comply with an order and there had been no order).

In the present case defendant urges that sanctions were not appropriate pursuant to Rule 37(b) because the defendant had not failed to comply with an order. We agree with defendant's contention. We further conclude that Rule 37(d) does not authorize sanctions in the present case because defendant did not violate one of the express instances in which it may apply. Therefore, there was no provision within Rule 37 authorizing the sanction imposed in the present case.

Plaintiff contends that the language of Rule 37 need not be strictly adhered to in determining the appropriateness of the sanction, since the court has inherent power and broad discretion in imposing sanctions. We decline to endorse the doctrine of a court's inherent power to award sanctions. Although some courts still resort to the use of inherent powers in assessing sanctions, it is argued that the inherent powers doctrine promotes inconsistency and uncertainty, creates a "randomly-enforced system," and dilutes the effect of Rule 37. See A. Behar, "The Misuse of Inherent Powers

16

When Imposing Sanctions for Discovery Abuse: the Exclusivity of Rule 37," 9 Cardozo Rev. 1779, (1988). We agree with this rationale and conclude that Rule 37 should be the source of authority in assessing sanctions for discovery abuse. Broad discretion is available to the trial court within the statutory language of this rule without reference to an inherent power theory.

Defendant contends that the sanction imposed was too severe in relation to the abuse, and we agree. The agent of defendant, Mr. Roos, did not bring the photographs of the accident site to his deposition on October 12, thus disobeying the subpoena duces tecum which had been issued to him on August 30, 1988. These photographs had still not been produced by November 12 at plaintiff's deposition, although they had been listed in a request for production on August 30. Compounding this lack of responsiveness, the court was obviously incensed over defendant's conduct regarding the disputed photographs at plaintiff's deposition. Our review of the record however, reveals that there were no other significant discovery abuses by defendant. We note that by October 12, 1988, only two months after the accident, plaintiff had deposed seven of defendant's employees, including the senior claim's representative, Mr. Dale Roos, and the employees who were working the morning of the accident who gave a statement to Mr. Roos. Plaintiff had also received the handwritten statements of these crew members. On October 14, 1988, defendant sent responses to plaintiff's interrogatories and requests for production. Aside from the material to which defendant interposed an objection, the answers were responsive. Supplemental responses were later sent to plaintiff. Thus within two and a half months from the date of injury, plaintiff had obtained most of the requested discovery.

Plaintiff has not been denied information; in fact, the amount of discovery accomplished by plaintiff in a short amount of time demonstrates that defendant has been cooperative in discovery. In contrast, nearly a year after the accident, plaintiff, the only witness to the accident, still has not been deposed by defendant. Prohibiting discovery is a severe sanction, compounded in this case by the setting of a September 1989 trial date. The record does not reveal any egregious conduct by defendant which would warrant the severe sanctions imposed in this case.

Justice Sheehy's dissent suggests the prohibition on discovery was authorized as part of a protective order pursuant to Rule 26(c) so that our discussion of Rule 37 is not appropriate. We point out that a protective order under Rule 26(c) is authorized to protect a party from annoyance, embarrassment, oppression or undue burden or expense. We conclude that none of these are present in this case.

We regret that experienced counsel were not able to resolve this issue between themselves through reasonable communication. While we understand that attorneys "in the pit" may react in an impulsive or instinctive manner, such disputes are best resolved between the attorneys. Unfortunately a minor dispute evolved into a significant court issue where telephone calls could have resolved the questions.

The portion of the District Court's order which enjoined defendant from any further discovery until ten days after compliance with the order is therefore vacated. We also vacate the September 1989 trial date and order the court to reset a new trial date, allowing both parties adequate time to pursue discovery.

## V

Did the District Court err in requiring defendant to pay plaintiff's attorney fees and costs incurred in bringing the motion to compel?

The District Court order of February 10, 1989, ordered defendant to pay $7250 in attorney fees and $170 in costs which were incurred by plaintiff in bringing the motion to compel discovery.

Defendant argues that expenses may be awarded pursuant to Rule 37(a)(4) unless "the opposition to the motion was substantially justified." Defendant contends that its opposition to disclosure of the identity of non-witness experts and its opposition to disclosure of the witness statements was substantially justified, as demonstrated by the fact that these issues were appealed to this Court. Defendant also contends that its opposition to disclosure of the earnings of certain Burlington Northern employees was substantially justified as demonstrated by the fact that the District Court granted a partial protective order on this issue, protecting the identities of the employees.

From the record, however, it is clear that defendant's non-production of the photographs of the accident site at least partially motivated both the motion to compel, and the District Court's order. These photographs were clearly discoverable and at no point did defendant dispute this. However, defendant was dilatory in producing the photographs, did not obey the subpoena duces tecum, and was uncooperative at plaintiff's deposition by refusing to allow plaintiff to view the photos prior to being deposed. It is understandable that at this point, plaintiff's counsel decided that a motion to compel discovery was necessary, and while defendant did not oppose plaintiff's entitlement to these photos, and in fact did deliver the photographs on December 13, 1988 prior

19

to the court's order, we conclude that the motion to compel and the court's order were largely in response to the fact that the photographs were not produced in a timely manner. Thus we conclude that the expenses were appropriately awarded pursuant to Rule 37(a)(4).

Defendants also contend that this award may not be affirmed because an award of expenses under Rule 37(a)(4) can only be made after a hearing on the issue, and no hearing was held in the present case.

Rule 37(a)(4) does not require a hearing but merely an opportunity for a hearing. The record does not contain a request for a hearing before the District Court on the part of the defendant. We affirm the award of attorney fees and costs.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____
Justices

Justice L.C. Gulbrandson specially concurring and dissenting.

I concur with the majority opinion insofar as the first four issues are concerned, but I respectfully dissent to the affirmation of the award of $7,250 in plaintiff's attorney fees, and costs, in bringing the motion to compel discovery. It appears that the attorney fees fixed by the District Court clearly involved items which the majority has now ruled were not discoverable. I would remand the issue of attorney fees and costs to the District Court for redetermination.

L. C. Gulbrandson,
_____
Justice

Justice R. C. McDonough dissents:

The facts in this case clearly show a squabble which escalated between advocates relative to discovery. Such differences are commonplace at the trial court level and are disposed of in the discretion of the trial judge. These orders are interlocutory and non-appealable by our rules for the losing party normally has an adequate remedy on appeal from the final judgment. Here, the decisions relative to discovery did not dispose of any major aspect of the case with any finality, deny any substantive fundamental right which would be prejudicial to the defendant, nor are there any procedural entanglements. This supervision of the trial court is not necessary or proper.

I would deny the writ.

_____
                Justice

Justice John C. Sheehy, dissenting:


The factual background of this case is one where the railroad counsel obstructively frustrated the discovery process. District Judge McKittrick, faced with this record of implacable belligerence, restrained himself remarkably by not finding the objectors in contempt and limiting his order to a mere assessment of attorney fees and costs, which this Court has no alternative but to sustain.

The opinion of this Court while not condoning the obstinate blocking of discovery in this case, is at some pains not to hurt anybody's feelings. The result is a series of nonapplicable statements respecting discovery (especially about Rule 37) which are not pertinent to this case, and which can only be a source of difficulty in future cases when problems of discovery arise.


Identity Of Experts Not To Be Called

The order of the District Court on this subject was as follows:

> 1. The defendant is ordered to respond to plaintiff's interrogatory number 7 by identifying by name and address those experts it has retained and conferred with even though it has no intention of calling them as witnesses at the time of trial. This information is to be in addition to that information required by Rule 26, M.R.Civ.P., concerning those experts whom the defendant intends to call as witnesses at the time of trial. In ordering the disclosure of these names, the court concurs with the reasoning set forth by the United States District Court for the District of Maryland, in Baki v. BF Diamond Construction Co. (1976), 71 F.R.D. 179.

23

The opinion of this Court holds that the identity of nonwitness experts is discoverable under Rule 26(b)(4)(B), M.R.Civ.P., "only upon showing of exceptional circumstances." It further holds that because the plaintiff made no showing of need for this information that portion of the District Court's order is reversed.

That was not the reason given by the railroad for refusing to make such disclosure. The interrogatories, and the responses thereto, are as follows:

> Interrogatory No. 7: State the names and addresses of all experts you have retained or conferred with concerning this action or any facts or circumstances which are relevant to this action; and (a) state which experts you expect to call as an expert witness at trial;
> . . .
>
> Answer: Objection must be interposed to this interrogatory to the extent that it seeks the identity of experts not to be called as expert witnesses at trial as it seeks information which constitutes work product and seeks to invade the mental impressions, conclusions, opinions or legal theories of BN's counsel. With regard to expert witnesses who will be called to testify, no decision has been made as yet as to what such witnesses, if any, will testify for BN. It is likely that one or more of plaintiff's treating physician or other medical providers will be called.
>
> Iterrogatory No. 8: Identify all persons whom you have consulted as experts but do not intend to call at a trial to testify by giving their names and addresses and qualifications.
>
> Answer: See objection posed to interrogatory number 7.

24

Not only did the railroad counsel not identify experts who will not be called, they also did not name experts they intended to call at the time of trial.

In Detwiler v. Gall, Landau & Young Construction Co. (Wash. App. 1986), 712 P.2d 316, 319, the court warned counsel about playing games with the identities of expert witnesses. It said:

> Although our decision precludes discovery of the identities of nonwitness experts without a showing of exceptional circumstances, we caution counsel against using CR 26(b)(4)(B) as a tactic to delay discovery of an expert witness who will be called to testify at trial. CR 26(e)(1) places a duty upon the parties to seasonably supplement responses to interrogatories requesting information about expert witnesses. Exclusion of the expert's testimony is an appropriate sanction for failure to supply such supplementary responses (citing cases).

The real difficulty with the decision relating to the identity of experts not expected to be called for testimony is that nothing in this record shows that any such experts exist. This Court may have been jockeyed into giving an advisory opinion on a purely-imagined factual situation. Moreover, it is quite possible in this case that the experts consulted or retained by the employer are actually employees of the corporation who are expert in their field. Burlington Northern may have, and undoubtedly does have, people in its employ who are outstanding experts on particular subjects, for example the engineering and operation of air brake systems on railroad cars. If such persons exist, plaintiff is entitled to discovery as to "the identity and location of persons having knowledge of any discoverable matter." Rule 26(b)(1).

25

In this case we should follow the lead of the North Carolina Court of Appeals which suggested that with respect to such expert witnesses not expected to be called, that the court should hold an _in camera_ review to consider (1) whether the expert has information of discoverable matter, (2) how the expert acquired the information, and (3) whether the party expects to call the expert as a witness. Mack v. Moore, et al. (C.A. N.C. 1988), 372 S.E.2d 314.

It is remarkable that the opinion does not mention in any respect the case relied upon by the District Court on this subject. Baki v. BF Diamond Construction Co. (1976), 71 F.R.D. 179.

## Statements Of Witnesses

The following is the request for production and re-sponse thereto relating to this subject:

> Request for Production No. 14: All statements taken from crew members, railroad employees, or other witnesses and which pertain to the accident in which Ed Gilliland was injured at the BN railroad yard in Whitefish, Montana, on August 4, 1988.

> Response: Objection must be interposed as to this request to the extent that it seeks material prepared in anticipation of litigation, work product, or trial material. Subject to said objection, see copies of handwritten statements of Steve Bruce, Greg Loberg, Russ Riley and Robbie Seward produced in response to subpoena duces tecum and attached to the deposition of Mr. Ruse. Also see copies of statements attached to the deposition of Mr. Riley.

In handling this subject, the District Court ordered:

> 3. Pursuant to the Montana Supreme Court's decision in _Cantrell_ v.

26

> *Henderson*, 718 P.2d 318 (Mont. 1986),
> the defendant is ordered to respond to
> plaintiff's request for production no.
> 14 by providing the plaintiff's attorney
> a copy of all statements or transcripts
> of all recorded statements taken from
> crew members, railroad employees, or
> other witnesses, and which pertain to
> the accident in which the plaintiff was
> injured at the defendant's railroad yard
> in Whitefish, Montana, on August 4,
> 1988. This order is intended to specif-
> ically apply to those recorded state-
> ments taken from the defendant's crew
> members by Dale Roos, the railroad's
> claims agent, on the morning of August
> 4, 1988, shortly after the plaintiff's
> injury occurred.

There is not any doubt now that plaintiff was entitled to these statements upon his request for production, and was so entitled at every stage of the proceedings before us. That issue has been decided in Cantrell v. Henderson, relied on by the District Court, supra. There should not have been a moment's quibble about the right of the plaintiff to have those statements when requested.

Instead of so holding, and ending the matter, the plural opinion of this Court goes on gratuitously to talk about "allowing a party to build its case on the other party's efforts." That subject has no relevance to the production of statements from witnesses taken in the ordinary course of business. This Court then goes on to conclude that if these witness statements contain material which may be privileged there should be some sort of in camera inspection relating to them. That holding, of course, waters down considerably the effect of Cantrell v. Henderson, and is completely unnecessary to a decision on the subject of the witness statements before us here.

27

## Photographs and the Subpoena Duces Tecum

The request for photographs and the response was as follows:

> Request for Production No. 10: All photographs taken of the scene where plaintiff was injured on August 4, 1988, or any of the railroad cars on Track 2 at the time of plaintiff's injury.
>
> Response: Defendant will agree to an exchange of photographs at a mutually agreeable time and place.

That response, filed in the District Court on October 14, 1988, was nothing less than a denial of production. The production of discoverable photographs cannot be conditioned upon a statement of "I will if you will."

On this subject the District Court ordered:

> 2. The defendant is ordered to respond to plaintiff's request for production number 10 by having duplicate photographs made of all photographs taken by the defendant or any of its agent at the scene where plaintiff was injured or of any of the railroad cars at the scene of plaintiff's injury at the time of his injury. These copies should then be sent to the office of the plaintiff's attorney with a bill for the costs of duplication. In the alternative, the defendant's attorneys can send the negatives to plaintiff's attorney who can have duplicate photographs made at his own expense and then return the negatives to the defendant.

Under Rule 34(a), M.R.Civ.P., a party may request the production of documents, including photographs. Under Rule 34(b), the request may be made without leave of court. The party upon whom the request is made must serve a written response within the time allowed under Rule 34(b) and if the request is objected to, "the reasons for objecting shall be

28

stated." The foregoing response does not include any reasons for objecting to the production of the photographs.

Thus, it was that on November 10, 1988, when the deposition of the plaintiff was scheduled to be taken by the defendant, counsel for the plaintiff requested that the photographs be presented to the plaintiff before the deposition was commenced. Counsel for Burlington Northern refused to allow the plaintiff to view the photos before his deposition but stated they would be made available during a recess or after the deposition had been concluded. This, although since October 14, 1988, or earlier, plaintiff was absolutely entitled under the rules to the production of the photographs for his inspection and copying.

In fact, in this case, plaintiff was entitled to the production of the photographs and of the statements taken of the witnesses at a much earlier time. On August 26, 1988, plaintiff had procured the issuance of subpoenae to witnesses Steve Bruce, Russ Riley and Greg Loberg. Also issued were subpoenae duces tecum for Dale Roos, Robbie Seward, John A. Sitton, and Rich Wetsch. In the subpoenae duces tecum, the witnesses were required to bring with them to their depositions, among other items, the photographs and the statements taken of the witnesses immediately following the injury. These were not produced at the time of the depositions, although no written objections were filed by the railroad at or prior to the time of the taking of the depositions. Some of these non-party witnesses were told by counsel that as to other statements, they did not have to produce them, and that the witnesses could withhold those statements if they wanted to.

The opinion makes no mention of Rule 45, and its affect on this case. Rule 45(d) provides the method of taking the deposition of a witness who is not a party to the action.

The rule specifically allows subpoenae commanding the witness to produce and permit inspection and copying of books, papers, documents and tangible things which fall within the scope of the examination permitted by Rule 26(b).

Further, under Rule 45(d), if a person objects to the production of documents under a subpoena, that objection must be made in writing within ten days after the service of the subpoena, or at or before the time specified in the subpoena for compliance. Only when objection is made in writing is the party serving the subpoena not entitled to inspect and copy the material unless an order of the court is obtained. Rule 45(f) provides that any person who without adequate excuse fails to obey a subpoena duces tecum served upon him may be deemed in contempt of court.

At the depositions of these witnesses, neither the statements nor the photographs were produced, despite the properly served subpoenae duces tecum.

We find in Moore's Federal Practice, Vol. 5A pg. 45-20 this statement:

> A party or witness cannot refuse to obey a subpoena that is validly served on him on the ground that the documents called for are irrelevant or immaterial, or the ground of privilege against self-incrimination, or on any other ground, but should make a motion to quash within the time provided in Rule 45(b).

On this subject, Moore felt it proper to quote the language of the late Chief Justice Vincent in United States v. Bryan (1950), 339 U.S. 323, 331, 70 S.Ct. 724, 94 L.Ed. 884:

> Persons summoned as witnesses by competent authority have certain minimum duties and obligations which are necessary concessions to the public interest in the orderly operation of legislative

and judicial machinery. A subpoena has never been treated as an invitation to a game of hare and hounds, in which the witness must testify only if cornered at the end of the chase. If that were the case, then, indeed, the great power of testimonial compulsion, so necessary to the effective functioning of courts and legislatures, would be a nullity. We have often iterated the importance of this public duty, which every person within the jurisdiction of the Government is bound to perform when properly summoned.

Plaintiff in this case was proceeding properly under Rule 45 in obtaining discovery and production of documents from a person not a party. Rule 34 deals with the discovery or production of items from a party. Rule 45(b) provides for a subpoena duces tecum to any person, whether or not a party, to produce documents, papers, or other enumerated items at the taking of a deposition or at a hearing or trial.

The record here is clear that the railroad not only contumaciously refused to produce documents after a proper request for production under Rule 34; it earlier allowed its witness employees to risk contempt of court in failing to produce those pertinent documents when their depositions were taken after the service upon them of a subpoena duces tecum.

## Severity of Sanctions

I particularly disagree with the portion of the opinion which recites that "the record does not reveal any egregious conduct by defendant which would warrant the severe sanctions imposed in this case."

Apart from failing to produce the photographs in a timely manner, the opinion states "our review of the record, however, reveals that there were no other significant discovery abuses by defendant." The opinion then goes on to excuse

31

the tactics of the defendant on the grounds that "most of the requested discovery" had been supplied.

The defendant here had refused to produce statements to which the plaintiff was clearly entitled under Cantrell v. Henderson (Mont. 1986), 718 P.2d 318; had withheld the photographs subject to a subpoena duces tecum, at a nonparty's deposition, and refused to produce them at the plaintiff's deposition; and had told nonparty witnesses that they did not have to produce their personal statements if they did not want to. If these actions do not amount to egregious conduct, then this Court has raised the threshhold of egregious conduct so high that no recalcitrant can overstep it.

The purported "sanction" reversed by the opinion is not a sanction at all but rather a response to a motion for a protective order granted by the District Court.

On November 11, 1988, the plaintiff moved the court for its order compelling the defendant to produce the evidence that had been withheld. At the defendant's request, a hearing on that motion was not scheduled until December 5, 1988. On November 11, 1988, the plaintiff also moved the court for a protective order enjoining the defendant from conducting any further discovery in the case until ten days after it had responded to plaintiff's request for discovery by producing the information and documents that were being withheld.

Following the motion for a protective order by the plaintiff, the defendant issued a notice of deposition on November 28, 1988, that the deposition of the plaintiff would be taken in Kalispell on Wednesday, December 7, 1988.

On November 21, 1988, the District Court issued its order to show cause to Dale Roos, a nonparty witness, and to Charles Dearden and James Robischon, the defendant's counsel, to appear and show cause on December 5, 1988, why each of them should not individually be held in contempt for

32

intentional disregard of a lawful subpoena. (The District Court has yet to rule on this show-cause order.)

In response, on December 2, 1988, the defendant filed in the District Court a motion to dismiss plaintiff's complaint, or in the alternative, to order discovery, requiring the plaintiff to answer interrogatories and requests for production. In that motion the defendant Burlington Northern moved the court "to make an order requiring plaintiff to respond to discovery before he undertakes any other discovery and such other orders that the court may deem just." (The same protective order this Court finds "severe.")

At the December 5, 1988 hearing before the District Court, the court ruled from the bench on most of the plaintiff's motions relating to discovery. The court took two issues under advisement and requested additional briefing. One of the issues was the identification of nontestifying expert witnesses.

After the December 5 hearing, when it was clear what the court's ruling on photographs was going to be, the defendant mailed, on December 13, 1988, the photographs to the plaintiff's attorney.

On February 10, 1989, the court issued its written order in this cause. In three separate paragraphs in the order, the District Court ordered the defendant to produce a catalogue of safety or instructional films or brochures to the plaintiff, to produce the photographs, and to produce the statements taken from the witnesses immediately following the accident by the agent of Burlington Northern. The court went on to make two further orders that it deemed necessary in the premises:

> IT IS FURTHER ORDERED that due to the defendant's failure to provide the aforementioned information and evidence

prior to being ordered to do so, the following relief is granted:

1. In the event that the statements from Greg Loberg, Robbie Seward and Steve Bruce suggest areas of examination which could have been covered during their previous depositions if their statements had been produced when requested, plaintiff may re-depose those witnesses.

2. The defendant is enjoined from conducting any further discovery in this case until at least ten days after it has complied with this order by responding to the aforementioned interrogatories and producing those items it has been ordered to produce.

Thus, the District Court, in the face of a clear record of obstruction on the part of the railroad, responded to the motion for a protective order and entered the requirement of a ten-day compliance before further discovery could be had by the defendant. The effect of the opinion is to remove this protective order and force the plaintiff to a deposition in spite of the power of the District Court to control the sequence and timing of discovery. Rule 26(d), M.R.Civ.P.

Thus, the discussion in the opinion regarding Rule 37 and the applicable sanctions in it has no relevance here. This was a protective order, issued by the District Court under Rule 26(c), M.R.Civ.P., which provides:

Protective orders. Upon motion by a party or by the person from whom discovery is sought, and for good cause shown, the court in which the action is pending or alternatively, on matters relating to a deposition, the court or the district court where the deposition is to be taken, may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppres-

34

sion, <u>or</u> <u>undue</u> <u>burden</u> <u>or</u> <u>expense</u>, including one or more of the following:

(1) that the discovery not be had;

(2) that the discovery may be had only on specified terms and conditions, including a designation of the time or place;

(3) that the discovery may be had only by a method of discovery other than that selected by the party seeking discovery;
. . . (Emphasis supplied.)

The protective order issued by the District Court was clearly well within its power, and should be upheld by this Court.

Finally, it should be noted that the so-called "sanction" is one completely within the power of the defendant Burlington Northern to remove. All Burlington Northern had to do was to comply with a just order of the District Court and the limitation would be removed. If this "sanction" constituted punishment, it is punishment which the defendant has willingly embraced.

I agree that the plaintiff here is entitled to the attorney fees and costs as fixed by the District Court; otherwise I disagree with the rationale and approach of the opinion in this cause.

After this dissent was first proposed, there was inserted in the opinion the language that Rule 26(c) (the protective order) does not apply because there has been no annoyance, embarrassment, oppression, or undue burden or expense under the Rule. That gratuitous conclusion is completely unsupported in the record. The District Court has ruled that plaintiff has been put to undue burden and expense in excess of $7,000. The oppressive obstinancy of the railroad to refuse discovery in this case fits every category

35

of the preconditions in Rule 26(c) for a protective order. Moreover, the gratuitous conclusion ignores the power of the district court, in the interests of justice, to control the timing and sequence of discovery under Rule 26(d). It should be clear to all that a district court has a broad discretion to control discovery so as to make the rules of discovery work properly, and that is what the District Court strove to do in this case. This opinion in itself frustrates that process.

On August 28, 1989, while this case was still pending in this Court, and before the opinion was in final form, a majority of Justices, without a Court conference on the subject, entered an order vacating the trial date of this cause that had been set by the District Court. The result was that the plaintiff, whose income from employment stopped on the date of his injury, faces a further delay before he can arrange a trial date in the District Court. In his desperation, the plaintiff filed a motion in this Court on September 5, 1989, offering to waive his right to all discovery and expenses if we would simply dismiss the application. From that viewpoint Justice McDonough is correct in his dissent. We have not serviced justice or the parties by the holding in this case.

_____
Justice

I concur in the dissents of Mr. Justice R. C. McDonough and Mr. Justice John C. Sheehy.

_____
Justice

36